BENSON ORMSBY, ET AL., *v.* M. L. CIVIL.

VORINDA MCGEEHEE, ET AL., *v.* SAME.

**Conveyances—Liens—Estoppel.**

>   Where one about to receive a conveyance of real estate does not dis-
>   close that fact, but makes inquiry as to liens of one holding a lien,
>   such lienholder is not bound to disclose the existence of the lien, but
>   where such inquiry is made by one who informs the lienholder that
>   the object of his inquiry is to find out whether the land was incum-
>   bered, in order to decide whether he would buy it or could safely ac-
>   cept it as a security, the lienholder is bound to disclose the existence of
>   his lien, or he will be estopped thereafter from asserting such lien.

APPEAL FROM LOUISVILLE CHANCERY COURT.

June 8, 1877.

OPINION BY JUDGE COFER:

Calvert's statement that Ormsby assigned the note to Mrs. Civil
in consideration of the transfer of sixty-five shares of stock, and that
the transfer was made on the day of the date of the note, is, in our
opinion, true. In these statements he stands uncontradicted. He is
no doubt mistaken when he says he sent the note to her by mail on
the day it was executed and assigned, but that circumstance is not
sufficient to discredit him as a witness. Unless that be done we
must find as an established fact that the transfer was made as stated.

It is true Mrs. Civil might have testified as to the time when she
received the note, and that she had the stock which Calvert says he
transferred for her to Ormsby for the note. But her failure to tes-
tify as to these facts is not very material, as she made out her case
on this point by the testimony of Calvert. As long as he was uncon-
tradicted she had a prima facie case without testifying herself, unless
Calvert is to be discredited because she did not testify, which will not
be contended for.

The assignment of the note without recourse is a circumstance
rather in her favor than against her. It was natural that Ormsby
should not desire to become liable on his assignment. But if, as
claimed by Ormsby, the note was paid off by Calvert and taken up,
and he afterward wrote the assignment for the purpose of again put-
ting it into circulation and thereby to commit a fraud, it is hardly
probable that he would have been mindful to protect Ormsby by an
assignment without recourse. The same may be said of the paper
dated August 20, 1872.

July 6, of that year, Calvert reconveyed the land to Ormsby and

received payment in full. The note held by Mrs. Civil was a lien on the land, and Ormsby having paid Calvert in full for it, in case he failed to pay the note the lien would be enforced against the land, and Ormsby would be loser to that extent, and hence it was proper that he should be indemnified. But if, as Ormsby claims, the note had been paid off, and the assignment afterwards filled up by Calvert, Ormsby would not have accepted the indemnity receipted for in that paper.

That he did accept it is conclusive against him that he assigned the note, and that it was never paid as he now claims. It is true that transaction was after the execution of the mortgage to Mrs. McGee-hee, and is therefore not evidence against her, but it overthrows the whole theory of Ormsby's defense, and deprives her of any aid from that source to make out her case. The theory that the note was paid off and afterwards assigned by Calvert is unsustained by evidence. It rests wholly upon the answer of Ormsby, and as he is contradicted by that writing there remains nothing to uphold the claim that the note was paid off. It also shows that neither Calvert nor Ormsby regarded the reconveyance as canceling the note.

That the reconveyance canceled the lien as against Mrs. Civil cannot be maintained. She was not a party to that transaction, and the fact that Calvert may have been her agent cannot affect her rights, without evidence showing that he was specially authorized to release her lien in his own favor. Ormsby, as we have already decided, having transferred the note to her before the reconveyance, could not set up that conveyance against her. As between them the lien was certainly enforcible. It was evidenced by the deed of record when Mrs. McGeehee took her mortgage, and must prevail over it. The bad faith of Calvert or of Ormsby, if any, cannot prejudice Mrs. Civil, who, so far as the record shows, is as free from blame as Mrs. Mc-Geehee. So far as Mrs. Civil is concerned she stands precisely as she would have stood, if, instead of conveying the land back to Ormsby, Calvert had conveyed it to a third person, who had mortgaged it to Mrs. McGeehee.

That Calvert told Sherley that he had reconveyed the land, and failed to tell him that Mrs. Civil held the note or that the lien was not discharged, does not affect the question, even if it be conceded that he was her agent, and she is bound by his reply to Sherley as though she had made it herself. Sherley did not disclose his object in making the inquiry, and if he had made that inquiry of Mrs. Civil and she had not known all the facts known to Calvert, she would not

be estopped to assert her lien against Mrs. McGeehee.   What Calvert told him was a full answer to his question, and was true.

If he had disclosed the object of his inquiry, then it would have been Calvert's duty to disclose the existence of the lien.   But as he was not informed that the object of the inquiry was to ascertain whether the land was incumbered in order to decide whether it could be safely accepted as a security, the answer made by Calvert would not estop him, and a fortiori cannot estop Mrs. Civil.

Judgment *affirmed.*

*Ham Pope, for Ormsby, et al.*

*J. B. Kinkead, for Mrs. McGeehee, et al.*

*Barr, Goodloe & Humphrey, for appellee.*